## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRYAN C. GIROIR**                                        **CIVIL ACTION**

**VERSUS**                                                 **NO. 07-5670**

**BONITA PITTMAN, WARDEN**                                 **SECTION:  "K"(3)**

### REPORT AND RECOMMENDATION

Plaintiff, Bryan C. Giroir, filed this *pro se* complaint against Warden Bonita Pittman.  In this lawsuit, plaintiff claims that, while a pretrial detainee incarcerated within the Orleans Parish Prison system, he was denied adequate medical care, housing in a non-smoking dorm, access to the law library, and access to an adequate grievance procedure.

With respect to first three of those claims, defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1]  Plaintiff was ordered to file a memorandum in opposition to that motion,[2] but he failed to do so.

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the

---

[1] Rec. Doc. 12.

[2] Rec. Doc. 16.

mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine  issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment.  Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  Id.  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment

evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.;
Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).  "[S]ummary judgment
is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it
could not support a judgment in favor of the nonmovant."  Little v. Liquid Air Corp., 37 F.3d 1069,
1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

Inadequate Medical Care

In the complaint, plaintiff stated his medical claim as follows:

> Refuse to sent me to the hospital.  On 6/28/07 at University (8859726) (L89489050).
> I was giving pain medicin.  A prescription was wrote, they never fill it.  They gave
> me non nacodeitic pills for about 2 weeks.  I had a inportment, they brought me 3
> weeks late.  I ask to go back to see the specialist, it never happin.  They say it will
> take 6 to 8 weeks.[3]

It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial
detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate
indifference on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447,
457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999)
(convicted prisoner).  Even if it is assumed for the purposes of this decision that plaintiff has stated
a claim against Warden Pittman, which he has not,[4] she correctly notes in her motion that plaintiff's

---

[3] Rec. Doc. 1, p. 3.

[4] For the following reasons, it is clear that plaintiff has not as yet stated a viable official-capacity
or individual-capacity claim against Pittman.

   To the extent that plaintiff meant to assert an official-capacity claim against Pittman,
"[o]fficial capacity suits generally represent another way of pleading an action against an entity of
which an officer is an agent."  Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).
Accordingly, an official-capacity claim against Pittman would in reality be a claim against the local
governmental body itself.  However, in order to hold a local governmental body accountable for a

3

medical records refute any contention that his medical needs were met with deliberate indifference at the prison.[5]

Those medical records reflect that plaintiff suffered facial fractures in an altercation late at night on June 27, 2007. He was seen that same night by Orleans Parish Prison medical personnel, and he was sent to Charity Hospital's emergency department on the following day. On July 18, 2007, he was reevaluated by a prison physician who noted that a follow-up appointment at Charity Hospital was pending. On July 30, 2007, plaintiff was returned to Charity Hospital for his follow-up visit; however, he was turned away on that visit because the physician who was needed to make

_____

constitutional violation, a plaintiff must allege that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). Plaintiff does not allege that his purportedly inadequate medical care resulted from such an official policy or custom, and, therefore, any official-capacity claim against Pittman necessarily fails.

To the extent that plaintiff meant to assert an individual-capacity claim against Pittman, "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In this case, plaintiff has made no factual allegations whatsoever of the personal involvement of Pittman in his medical care. Moreover, the fact that Pittman holds a supervisory position is of no moment. A supervisory official may not be held liable pursuant 42 U.S.C. § 1983 under *any* theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."). Further, "there is no concept of supervisor strict liability under section 1983." Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[5] Plaintiff's medical records are attached as Exhibit A to the motion for summary judgment.

surgical decisions was unavailable.  Another appointment was secured, and plaintiff was brought

back to Charity Hospital on September 24, 2007.  Unfortunately, he was not seen by the physician

on that occasion either because the hospital staff could not locate plaintiff's records.  Upon

plaintiff's return to Orleans Parish Prison, the jail's medical staff noted the problem and again

requested that Charity Hospital reschedule the appointment.  The hospital then rescheduled an

appointment for January 15, 2008; however, plaintiff was released from incarceration on November

16, 2007.

It is evident from the foregoing that plaintiff's medical needs were not met with deliberate

indifference at the prison. The United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he
> plaintiff must show that officials refused to treat him, ignored his
> complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would
> clearly evince a wanton disregard for any serious medical needs. Furthermore, the
> decision whether to provide additional treatment is a classic example of a matter for
> medical judgment.  And, the failure to alleviate a significant risk that [the official]
> should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation

marks and citations omitted).  Moreover, "deliberate indifference cannot be inferred merely from

a negligent or even a grossly negligent response to a substantial risk of serious harm."  Thompson,

245 F.3d at 459.  Rather, "[d]eliberate indifference encompasses only unnecessary and wanton

infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059,

1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, plaintiff was injured late at night and seen immediately in the prison

medical department.  The following day, he was taken to the emergency department at Charity

Hospital. Prison authorities thereafter diligently secured follow-up appointments at Charity Hospital and transported him to those appointments. Although he was not seen by the hospital physicians on those occasions, that unfortunate circumstance was the fault of the hospital staff, not the prison authorities. Further, even if the prison authorities arguably could have done more in this case, that is not the test. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (the fact that medical treatment "may not have been the best money could buy" was insufficient to establish a constitutional violation); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Rather, as noted, the pertinent inquiry is whether plaintiff's serious medical needs were met with *deliberate indifference*. Although the Court in no way means to minimize plaintiff's injuries or the obstacles he faced in receiving care at Charity Hospital, there is simply no basis for finding that his serious medical needs were met with deliberate indifference on the part of *the prison authorities*.

<u>Non-Smoking Dorm</u>

In his complaint, plaintiff asked that the Court order that he be housed in a non-smoking dorm. However, he did not state the basis for that request or offer any explanation as to why he required placement in a non-smoking dorm. Again, even if the Court overlooks the fact that plaintiff has not stated a proper official-capacity or individual-capacity claim against Pittman,[6] plaintiff still is not entitled to relief for several reasons.

---

[6] See *supra* note 4. Plaintiff has not alleged that the purported violation resulted from an official policy or custom or from Pittman's personal involvement.

6

First, although plaintiff has alleged exposure to tobacco smoke, the Constitution does not protect against all such exposure. Rather, only involuntary exposure to "unreasonably high levels" of environmental tobacco smoke is unconstitutional. Helling v. McKinney, 509 U.S. 25 (1993). Because plaintiff has made no allegation that his exposure rose to that level, he has failed to state a constitutional claim. Harris v. Ashby, No. 01-11110, 2002 WL 1899583, at *2 (5th Cir. July 8, 2002); see also Harrison v. Smith, 83 Fed. App'x 630, 631 (5th Cir. 2003).

Second, even if the Court were to assume that plaintiff had been exposed to unreasonably high levels of environmental tobacco smoke, prison officials cannot be held liable with respect to such a claim unless they acted with deliberate indifference. Helling, 509 U.S. at 35. Plaintiff does not even allege that he made Pittman aware of his exposure, nor does he refute Pittman's contention that she was in fact unaware of his need for placement in a non-smoking dorm. A prison official does not act with deliberate indifference in failing to protect inmates from a potential harm of which she is unaware. See Farmer v. Brennan, 511 U.S 825, 844 (1994). Accordingly, plaintiff cannot show the required deliberate indifference necessary to support his claim.

Third, plaintiff has been released from the Orleans Parish Prison system. Therefore, any request for injunctive relief with respect to this claim is moot. Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

Fourth, as to any claim for monetary damages, plaintiff's claim is barred unless he suffered a physical injury as a result of the exposure. 42 U.S.C. § 1997e(e); Herman, 238 F.3d at 665-66. Plaintiff has alleged no such injury. Moreover, even if plaintiff were seeking damages for an

increased risk of developing a tobacco-related injury in the *future* as a result of his exposure, his

claim is still barred by § 1997e(e).  See Herman, 238 F.3d at 666.

Law Library

In the complaint, plaintiff stated without elaboration that he was denied access to the prison's

law library.  Once again, even if the Court overlooks the fact that plaintiff has not stated a proper

official-capacity or individual-capacity claim against Pittman,[7] he still is not entitled to relief.

It is clear that inmates have a constitutional right of meaningful access to the courts, which

includes a right of access to law libraries or assistance from legally trained personnel necessary to

file nonfrivolous legal claims challenging their convictions or conditions of confinement.  Bounds

v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999).[8]

However, claims alleging violations of that right are not cognizable unless the prisoner's position

as a litigant was prejudiced by the denial of access.  See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317

(5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132

---

[7]  See *supra* note 4.  Plaintiff has not alleged that the purported violation resulted from an official policy or custom or from Pittman's personal involvement.

[8]  The right of access to courts extends to pretrial detainees, such as plaintiff, as well as to convicted prisoners.  See United States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988); Sosa v. Strain, Civil Action No. 06-9040, 2007 WL 1521441, at *6 n.8 (E.D. La. May 22, 2007); Buckenburger v. Strain, Civil Action No. 06-5670, 2006 WL 4503353, at *3 (E.D. La. Oct. 20, 2006); Kirkpatrick v. Daugherty, Civil Action No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006).  However, pretrial detainees are often in a different situation, in that they normally have appointed counsel representing them with respect to their pending criminal charges.  The appointment of such counsel satisfies the detainee's right of access to courts for his criminal proceedings; in those circumstances, he is not additionally entitled to independent access to a law library and legal materials.  Sosa, 2007 WL 1521441, at *6 n.8; Buckenburger, 2006 WL 4503353, at *3; Kirkpatrick, 2006 WL 2401108, at *4.

8

F.3d 225, 230-31 (5th Cir. 1998); <u>Walker v. Navarro County Jail</u>, 4 F.3d 410, 413 (5th Cir. 1993).

Plaintiff has not alleged, much less pointed to evidence establishing, that there was a nonfrivolous

claim that he was unable to pursue as result of being denied access to the law library. Therefore, he

cannot show that he was prejudiced as a result of the alleged denial, and his claim necessarily fails.

<u>Grievance Procedure</u>

Lastly, out of an abundance of caution, the Court notes that plaintiff stated in the complaint,

without elaboration, that his grievances were "never sent ... back."[9]  It is unclear if plaintiff intended

that statement as a separate claim.[10]  However, to the extent that was intended, the claim should be

dismissed *sua sponte* as frivolous.[11]

---

[9] Rec. Doc. 1, p. 3.

[10] Defendant did not construe the statement as a separate claim, and therefore it was not addressed in her motion for summary judgment.

[11] Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

First, again, plaintiff's claim initially fails because he has failed to allege that the purported violation resulted from an official policy or custom, as is necessary for an official-capacity claim, or from Pittman's personal involvement, as is required for an individual-capacity claim.[12]

Second, in any event, the underlying claim is meritless because an inmate simply has no constitutional right to an effective grievance procedure. In Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005), a prisoner alleged that prison officials failed to properly investigate his grievances complaining about perceived civil rights violations. The United States Fifth Circuit Court of Appeals held that the claim was frivolous because a prisoner has no federally protected liberty interest in having his grievances investigated and resolved to his satisfaction. Id. at 373-74; see also Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); George v. Travis, Civil Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civil Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

---

court shall dismiss the case at any time if the court determines that ... the action or appeal –
    (i) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be granted; or
    (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

[12] See supra note 4.

## RECOMMENDATION

It is therefore **RECOMMENDED** that defendant's unopposed motion for summary judgment be **GRANTED** and that plaintiff's claims that he was denied adequate medical care, housing in a non-smoking dorm, and access to the law library be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's claim challenging the prison grievance procedure be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as frivolous.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fourth day of April, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**